**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No.: 25-CR-264 (APM)** |
| **v.** | : | |
| | : | |
| **TYRONE ROBINSON**, | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' REPLY IN FURTHER SUPPORT OF ITS MOTION
FOR A *NUNC PRO TUNC* EXTENSION OF THE PRETRIAL DEADLINE
TO FILE EXPERT DISCLOSURE**

The Government received and promptly disclosed to Defendant the results of a DNA Report pertinent to this case just over two weeks after the Court's deadline to make required expert disclosures pursuant to Rule 16(a)(1)(G) and over two months before trial. Formal notice, which largely reiterated the content of the DNA Report, was filed about two weeks thereafter, more than a month and a half before trial. The Defendant now argues that the short delay, well in advance of trial, has caused such serious prejudice that the Court should impose the most extreme sanction and not permit the jury to assess highly probative evidence. Notably, the Defendant does not actually describe any efforts made to assess the evidence or retain his own expert since the Government's disclosure of the DNA Report on April 7, 2026. Because the Government's delay in providing notice was reasonable and the Defendant has failed to actually demonstrate prejudice, the Court should grant the Government's motion.

I.      **There Was Good Cause for the Government's Untimely Notice.**

As set forth in the Government's motion, there is ample good cause for the timing of the Government's notice, in that the DNA Report was not received until April 6, 2026. The Defendant's chronology omits critical context and presents an incomplete account of the procedural history of this case. A full review of the record demonstrates that the Government acted reasonably and diligently throughout the relevant period and moved expeditiously to obtain and

disclose the DNA evidence once plea negotiations proved unfruitful and over a month before the matter was placed on trial track in January 2026.

This case originated in May 2025. Between May 2025 and January 2026, however, the parties were actively engaged in plea discussions at the Defendant's request, and no trial date had been set during that period. Indeed, trial was not scheduled until January 15, 2026.

Nevertheless, on December 11, 2025, AUSA Cole requested DNA evidence from this case be submitted to the U.S. Army Criminal Investigation Laboratory ("USACIL") for DNA analysis. That same day, December 11, 2025, AUSA Cole's request was forwarded to the lead case agent, Agent Brown, and it was Agent Brown's responsibility to complete the submission paperwork and gather supporting documentation to be sent to ATF Project Safe Neighborhood ("PSN") coordinators for review and final submission to the USACIL, which was conducting DNA testing for PSN cases. However, from December 2025 to January 2026, Agent Brown was regularly taking leave to handle medical issues and the subsequent death of a family member. As a result of those issues, Agent Brown inadvertently overlooked the request to send the DNA material out for testing until late January 2026. After the submission paperwork was completed in late January 2026, the request for DNA testing was formally submitted to the USACIL on February 9, 2026. When the Government later discovered in early March that an administrative omission in the submission chain had delayed the transfer of evidence, corrective action was taken immediately, and the evidence was transferred to the USACIL on March 20, 2026. The assigned forensic examiner thereafter completed the analysis promptly, and the DNA report was issued and disclosed to the government on April 6, 2026. The DNA results were sent to the Defendant the *very next day*, on April 7, 2026, giving ample notice well in advance of trial.

In other words, once trial was set and DNA testing became necessary for litigation

purposes, the Government secured testing, corrected an unforeseen administrative issue, obtained the laboratory results, and disclosed those results within approximately three months. That timeline does not reflect undue delay. And while the Government encountered a limited administrative snag during the submission process, there is no basis to conclude that the Government acted in bad faith, ignored its obligations, or strategically delayed disclosure.

## II.    The Defendant Has Not Suffered Unfair Prejudice

In any case, the Defendant's opposition (ECF No. 38) has failed to demonstrate unfair prejudice as a result of the Government's delayed expert notice.

The Defendant's motion does not cite to any case in which an expert testifying about DNA has been excluded when notice was filed more than a month before trial. Other courts have admitted DNA testimony disclosed after a court deadline where it was disclosed even closer to trial. *See United States v. Aryeetey*, 168 F.4th 138, 141 (2d Cir. 2026) (affirming a lower court's decision to admit DNA testimony subject to a continuance when the report was received eleven days before trial and the expert notice was made just seven days before trial and over two months after the court-ordered deadline and over a year after the Defendant's arrest, because the Defendant was not prejudiced where he was on notice of pending DNA analysis for weeks); *United States v. Rowland*, No. 22-3022, 2024 WL 4100257, at *2 (3d Cir. Sept. 6, 2024) (denying suppression of evidence when the DNA report was disclosed over two years after the indictment and ten days before trial, expert's CV and testimony lists days later, and the full laboratory file not disclosed until the day DNA evidence was presented at trial because the defendant had been on notice of the DNA issue since the previous month but "had made no effort to retain an expert to testify about the DNA report, claiming that the process of obtaining an expert and preparing for cross-examination would have taken longer than a week.").

Indeed, courts have allowed experts to testify on far more unusual and complex topics when less notice was provided. *See United States v. Mohammed*, No. 06-cr-357 (CKK), 2008 WL 5552330, at *2 (D.D.C. May 6, 2008) (denying exclusion where Government's expert disclosure of a "narcotics expert of drug trafficking investigations in Afghanistan" was disclosed nine days before trial and over six months after it was requested); *see also United States v. Hammoud*, 381 F.3d 316, 336 (4th Cir. 2004) (affirming denial of sanctions where notice for an "expert regarding terrorist organizations and Hizballah" was filed over six months after court-ordered deadline and the defendant refused a continuance), *cert. granted, judgment vacated*, 543 U.S. 1097 (2005), *and opinion reinstated in part*, 405 F.3d 1034 (4th Cir. 2005).

Here, as noted in the Government's motion, the Government's production of a DNA Report in this case was not unexpected to the Defendant. Indeed, in mid-February nearly four months before trial, counsel for the Defendant had reached out to the Government inquire about the timeline of testing, and the Government indicated that it expected to receive a report in the next month.

In addition, the delay in receiving the DNA Report, which included the opinions and bases and reasons thereof of the Government's expert, was brief, as the Defendant had the information on April 7, 2026, just eighteen days after the Court's March 20, 2026, expert disclosure deadline. The Government promptly (on April 9, 2026), sought the Defendant's position on the instant motion to file late expert notice. Despite follow-up from the Government on April 16, 2026, the Defendant did not ultimately indicate his position until April 20, 2026, and the Government filed its Expert Notice and the instant motion shortly thereafter. The Government has diligently supplemented its disclosures pursuant to Rule 16(a)(1)(G)(vi) since.

While the Defendant's opposition spends an inordinate amount of pages speculating on

what the Government could have done to obtain the DNA Report earlier in this case, it is notably silent as to what the Defendant has done in preparation for receiving DNA analysis, or in the more than a month since receiving the results of the DNA report on April 7, 2026. The Defendant's opposition does not indicate how many DNA experts he contacted to consult with or to retain as potential rebuttal witnesses in the interim. It does not, for example, indicate that experts contacted so far have been unavailable to assist due to the short time frame. The Defendant's motion does not explain why, despite being on notice that the Government was testing DNA in this matter for months and having received the DNA Report over a month ago, the Defendant has not identified an expert, consulted with an expert, or determined how to confront this information.

While DNA analysis is technical, it is also routinely presented in criminal trials, and the Defendant makes no effort to explain why the analysis here is distinct or unusual such that it would take over a month to prepare to rebut. The Defendant's opposition includes a conclusory statement that one month is not enough time to confront DNA evidence but makes no effort to explain why it is not.

### III.    Even If the Court Finds Prejudice, the Proper Remedy Is Not Exclusion

Should the Court find that the untimely expert notice has unfairly prejudiced the Defendant, the appropriate remedy here would be a continuance rather than exclusion.

While Rule 16(d) provides a number of options for the Court to address discovery violations, exclusion is an extreme remedy that is typically – although not necessarily exclusively – only used in cases of bad faith. *See United States v. Gray-Burriss*, 791 F.3d 50, 55–56 (D.C. Cir. 2015) ("Most relevant here, 'although Rule 16 gives trial judges the option of suppressing evidence as a result of [a party's] discovery violations such a severe sanction would seldom be appropriate where . . . the trial court finds that [the party's] violation did not result from its bad faith and that

a less drastic remedy (such as a continuance) will mitigate any unfair prejudice.'") (brackets in original) (quoting *United States v. Marshall*, 132 F.3d 63, 70 (D.C. Cir. 1998)); *see also United States v. Johnson*, 970 F.2d 907, 911 (D.C. Cir. 1992) ("Accordingly, we agree with those circuits that have treated bad faith as an important factor but not a prerequisite to exclusion."). Here, there is no allegation of bad faith, such as that the Government purposely chose to delay disclosing the DNA Report despite the Defendant's demands or the Court's deadline. Instead, the DNA report was sent to the Defendant the day after it was finalized and received by the United States Attorney's Office.

"Ordinarily, a continuance is the preferred sanction for a discovery delay because it gives the defense time to alleviate any prejudice it may have suffered from the late disclosure." *Marshall*, 132 F.3d at 70. Particularly because the at issue here is highly probative of a central question of the case – whether the Defendant possessed the firearm, D.C. Circuit law suggests that exclusion is not the appropriate remedy. *See Gray-Burriss*, 791 F.3d at 56. ("Exclusion is inappropriate, however, when it would subvert one of Rule 16's goals: contributing to an accurate determination of the issue of guilt or innocence.") (cleaned up) (quoting both *Marshall,* 132 F.3d at 70 and Fed. R. Crim. P. 16, advisory committee note to 1974 amendment).

The Defendant's choice to only seek exclusion in his opposition, rather than a continuance, undercuts his claim that the untimely disclosure actually resulted in any prejudice that would have been avoided if he had received the expert notice with more time to prepare for trial. *See United States v. Douglas*, 862 F. Supp. 521, 525 (D.D.C. 1994) ("Defendant was not prejudiced by government's delay in disclosing existence of audio and videotapes relevant to drug charge where although government had no good reason for discovery delay, it was simply negligent and there was no bad faith, and defendant's failure to request a continuance prior to trial belied any claim of

prejudice to his case."), *judgment aff'd*, 70 F.3d 638 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1098 (1996).

Thus, even if the Government's belated expert notice prejudiced the Defendant, the appropriate remedy is a continuance rather than exclusion of the evidence.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Government respectfully requests that the deadline to make any required expert disclosures pursuant to Rule 16(a)(1)(G) be extended from March 20, 2026, to April 23, 2026, *nunc pro tunc*.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:  */s/ Brendan M. Horan*
Brendan M. Horan
Special Assistant United States Attorney
N.Y. Bar No. 5302294
Emory V. Cole
PA Bar No. 49136
Assistant United States Attorney
601 D Street NW
Washington, DC 20579
(202) 730-6871
Brendan.Horan@usdoj.gov